Doherty and Boyd *v.* Choate.

---

=====

. J. W. Doherty and C. A. Boyd, Administrators, *v.* L. E. Choate *et al.*

1. Chancery Pleadings and Practice.   *Sale of land to pay debts.*   In a bill filed to sell land of deceased, to pay debts, it is more regular to set out the debts specifically, but if the amount is aggregated in the bill, and so reported by the master, and there is no exceptions, the cause will not be reversed for such action,

2. Same.   *Sale.   Personal assets.*   Where personal assets are insufficient to pay debts, but are ascertained, but not in a condition to be applied, the court, treating them as good and available, may decree a sale of land sufficient to discharge the excess of indebtedness over the amount of assets without the delay of the cause, until said assets can be actually applied.

Doherty and Boyd *v.* Choate.

3. Same. *Husband and wife. Parties.* Where the interest of the wife is adverse to that of the husband, she may be made a defendant to bill filed by him, and a judgment *pro confesso* against her may be taken.

### FROM WAYNE.

Appeal from the Chancery Court at Waynesboro. G. H. Nixon, Ch.

J. W. Doherty and Pitts & Patterson for complainants.

A. Hawkins for defendants.

Cooke, J., delivered the opinion of the court.

Lytle Choate died testate, in 1865, and complainants, J. W. Doherty and C. A. Boyd, were appointed his administrators with the will annexed. He died seized and possessed of a large landed estate, which he specifically devised to his three daughters, Elizabeth V. Doherty, then the wife of complainant, J. W. Doherty; Mary, who afterward intermarried with A. Pillow, and Artatia, then a minor, and who has since died intestate and without issue. Said lands were devised in unequal proportions, the principal part of them to respondent, Elizabeth V. By his will the testator provided that if his personal estate was insufficient to pay his debts, that the legatees be each charged *pro rata* upon their respective legacies, according to their value, for that purpose.

The original bill in this cause was filed on March 20, 1868, by said administrators against the widow and devisees. They exhibit a copy of said will, and

13—VOL. 16.

in general terms ask a construction of it, but point out no difficulty or state any reason why a construction by the court is necessary.

They allege that the personal estate will be wholly insufficient to pay the debts which they have already ascertained to be due from said estate, and that it will be necessary to sell a portion of the lands devised for that purpose. They set out the assets of the estate which have come to their hands, and that they have been sued and judgments rendered against them already for about the sum of $4,000; and that other suits are pending against them, and other debts may exist, but do not set out any of the debts specifically. They ask that the assets of said estate be marshaled in said chancery court, under the direction of the chancellor, and in order to attain that object properly, the chancellor construe said will, and direct what lands shall be sold for the payment of debts, after exhausting the personalty. For reasons which they state, they ask that the administration be transferred from the county court to the chancery court, and that a receiver be appointed, and that they be relieved from the administration of said estate; and they pray that said will be construed, that all proper references be had, accounts taken, and that said bill be filed in the nature and character of a general creditors' bill for the closing up of said estate; that the same be administered in said chancery court under the direction of the chancellor; that they be allowed to make their settlement with the chancery court and turn over all assets in their hands to a receiver to be ap-

propriated by said court; that all creditors be enjoined from proceeding by execution, etc., against the land belonging to said estate, and that all creditors of said estate be required to file their claims in said court for settlement and for general relief.

Garvin, Bell & Co., Prather & Smith, Harvey, Reath & Co., Walter A. Barrett and W. H. Cherry, who had obtained judgments against said administrators, came in as creditors under said bill and filed an answer to the same, by which they set up their respective judgments as debts against said estate, amounting in the aggregate to nearly $6,000, without interest, and made their answer a cross-bill, by which they prayed that the lands which are described in the will, or so much as was necessary, be sold for the satisfaction of their debts. They charge that the debts against the estate are greater than alleged in the original bill, and ask that complainants and respondents thereto be made respondents to the cross-bill. No process was issued upon this bill or prosecution bond executed. But the administrators answered the same, by which they admit its material allegations as to said alleged indebtedness.

Elizabeth V. Doherty and Pillow and wife were served with process, but failed to answer the original bill, and judgments *pro confesso* were taken against them. A guardian *ad litem* was appointed for said minor, Artatia, who answered, and at the April term, 1869, the cause was referred to the master to hear proof and report what available assets had or should have come to the hands of said administrators, and also,

what debts existed against said estate, etc. He took proof and reported that the available assets of said estate amounted to the sum of about $4,500, and that the indebtedness of said estate amounted to .about the sum of $6,500. This report being unexcepted, was confirmed.

It is proper to state that prior to this time, a receiver, one Cypert, had been appointed in the case of J. W. Doherty against A. C. Boyd, with whom said administrators made settlement, and turned over to him the effects of said estate, and said receiver had been recognized in this case and ordered to make his settlements with this court. Certain specified tracts or portions of said land were decreed to be sold for the purpose of satisfying the excess of the indebtedness of said estate over and above the available assets, as shown by said report. Said administrators were ordered to turn over the assets of said estate in their hands to said Cypert, as receiver, which they did, and from this time he was treated and held accountable as receiver in lieu of the administrators.

In 1873, Elizabeth V. Doherty, having been divorced from complainant, J. W. Doherty, and resumed her maiden name of Elizabeth V. Choate, presented these facts by affidavit, and sought to have the judgment *pro confesso*, which had been taken against her in 1868, as well as all the orders and decrees made in the cause, set aside, upon the ground that she had been, during all the time, a *feme covert*. This the court refused, but gave her leave to then make defenses to said bill. Thereupon she moved to dismiss

it for various reasons, the principal one being that her husband could not maintain a suit against her.

This motion was disallowed and she then answered the bill. Various motions and orders were subsequently made, not necessary to be noticed, and in 1876, on application, Garvin, Bell & Co., and said other creditors, were allowed to file an amended and supplemental cross-bill, in which they filed transcripts of their judgments, and sought a sale of the lands of said decedent for their satisfaction, and also to enjoin respondent, Elizabeth, from disposing of the same. This was demurred to and demurrer overruled, and was then answered. By their demurrer to this amended cross-bill, respondents, Elizabeth V. Choate and others, insisted that said complainants, as creditors, were entitled to all the relief under the original bill filed by the administrators that they sought by said cross-bill, and by consent all the causes were consolidated, and by consent also an order of reference, which had before been made, requiring the master to report all good claims belonging to said estate not collected, and the assets belonging to said estate, as well as the amount of the debts against said estate and to whom due, etc., was revived, and by consent was so enlarged that the clerk and master was required to make and report a settlement with Cypert, the receiver, and also with said administrators, and to make a full showing of the condition and assets of said estate, etc.

Under this order a mass of proof was taken, and the master reported that the administrators had accounted for all the assets of said estate in their hands

except $23.   He also   reported that said receiver,.
Cypert, had received in all $2,296.48, and paid out
$1,843.17, and that the balance of indebtedness due
from the estate upon judgments specifically set out was
$6,236.57.   Various   exceptions   were   filed   to said
report which were overruled, said report confirmed and
a decree   rendered,   directing   a sale of a sufficiency of·
said land to   satisfy said   indebtedness, after   applying
the assets on   hand for that purpose as far   as they·
would go.   .Respondent, Elizabeth V. Choate, has alone
appealed from this decree.

The Referees have reported that the testimony fully
sustains the findings of the chancellor.   To this part
of the   report there   is   no   sufficient exception.   The
exception is as follows:   " The Referees erroneously re-
port that the   finding of the court upon the proof
has been abundantly sustained, when in fact it is‗not
sustained by the proof."   This is no compliance with
the requisitions of the statute creating the commission.
We therefore take this part of the report as conclu-
sive.   It is very earnestly insisted for the appellant,
that there has been no such case made by these pro-
ceedings that gave the chancery court jurisdiction to
sell these lands for the payment of the · debts of said
estate.

By the provisions of the Code, section 2267, " where
an executor not authorized by will to sell and convey
real estate, or an administrator has exhausted the per-
sonal estate of the deceased in the payment of his
debts, leaving just debts or demands against him un-
paid, or paid by the representative out of his own

Doherty and Boyd *v.* Choate.

means, and the deceased died seized and possessed of real estate, the chancery or circuit court of the district or county, * * may, on the petition of the representative, or any *bona fide* creditor, whose debt remains unpaid, decree the sale of such portions thereof as may be least injurious to the heirs and legal representatives, and as may be sufficient to satisfy the debts or demands set forth in the bill or petition and shown to exist."

Section 2268 provides, "that before making such decree it shall be made to appear to the satisfaction of the court, that the personal estate has been exhausted in the payment of *bona fide* debts, and that the debts or demands for which the sale is sought, are justly due and owing, either to creditors or to the representative for advances out of his own means, to pay just demands against the estate."

It is insisted, in the first place, that the debts are not specifically set out in the bill, or ascertained by the report, and consequently there was no such case made as authorized the first decree for the sale of a portion of said lands. An aggregate amount of debts, however, was established by proof, exceeding the amount of assets of the estate by $2,000, and so reported by the master, and there was no exception to this report. It would have been more regular, as well as more proper, to have set out each specific debt, and to whom due, but as there was no exception, and an aggregate of indebtedness was ascertained over the amount of assets, which showed the necessity of the sale of a greater amount of the land than was then decreed to be

sold to satisfy the same, we do not think the case should be reversed on this account. Moreover, by the express provision of the statute, either the representatives or any *bona fide* creditor may file the bill, and all creditors, whether named in the bill or not, may come in under it, etc., as in case of a creditors' bill: 6 Yer., 66, 67. And these creditors, except one, did come in by their answers and set up their debts, and which are abundantly shown to be *bona fide* subsisting debts against said estate, and without reference to it as a cross-bill, these debts are sufficiently set up; and while this was after the first decree, it was before the sale, and the order of sale was reversed subsequently, and the order of sale made under it.

It is next insisted that the sale was void or the decree erroneous, because there was no actual application of the personal assets in the hands of the administrators to the payment of debts before the decree of sale.

In the case of *Edmeston* v. *Edmeston,* at the December term, 1883, of this court, it was held that where the amount of the personal assets is ascertained, but are not in a condition to be applied, the court, treating them as good and available, may decree a sale of land sufficient to discharge the excess of indebtedness over the whole amount of the assets, without the delay of the cause until said assets can be actually applied, as the court can see that if it were done, the sale, to that extent, at least, would have to be made, and nothing more has been done in this case, as the sales actually made have not produced a

fund sufficient to satisfy such excess had all the personal assets been actually applied to the payment of the debts before such sales were ordered. There can be no question, we think, that the remaining indebtedness, for which the last decree was rendered, is fully established.

It is next insisted that said debts were never properly filed until the filing of the amended and supplemental cross-bill, and hence they are barred by the statutes of limitation, which are pleaded and relied upon by respondent, E. V. Choate, in her answer to this cross-bill.

But if it were conceded that this assumption is correct, which we do not think is so, there was no new cause of action alleged in said amended bill, and hence the amendment related to the filing of the original bill, and under our authorities, even if these claims are treated as having been filed under the original bill of the administrators, the action being for the benefit of all creditors, they would relate to the filing of that bill.

As to the claim of Edwards, it has been adjudged a valid claim against said estate, upon appeal to this court in this cause, and can not now be questioned, and the statute could not begin to *run* in favor of the heir until after the date of said judgment: *Henry v. Mills*, 1 Lea, 144.

It is next insisted that as said appellant was a married woman, and the wife of one of the complainants, she could not be sued by him, and the judgment *pro confesso* against her, and the decrees

prior to the time of her discoverture, were void, etc., at least erroneous as to her.

Her interest was *adverse* to that of her husband and she was properly made a respondent to the bill, and a judgment *pro confesso* against a married woman admits the allegations of the bill: 6 Lea, 715.

Many other exceptions have been taken and questions raised, but these are all that require any special notice. There have been great delays in the progress of the cases, resulting from various causes and the proceedings, especially in the earlier stages, have been somewhat irregular, but the entire record shows that the administration has been conducted in good faith and with fidelity on part of both the administrators and the receiver, and that both have faithfully accounted for all the effects of said estate which have, or ought to have come into their hands, and whether the appointment of said receiver was legal or regular makes no difference, as no loss to the estate has been occasioned thereby.

The debts for which said lands have been and are decreed to be sold, are shown to have been valid subsisting debts against said estate; no injustice has been done the devisees or the appellant; rights of third parties have *intervened* under the decrees in the cause, and unless impelled by some positive rule of law or patent error, we would not be inclined to reverse the case. We are satisfied that no such error has been shown to exist, and that substantial justice has been attained.

The Referees have reported that the chancellor's

decrees should be affirmed with costs, and we concur in their conclusion. The exceptions to the report will be disallowed, the report confirmed and the decree affirmed with costs.